IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**HORIZON LINES OF
PUERTO RICO, INC.,
Plaintiff**

v.                                                                                  CIVIL NO. 06-1262(DRD)

**LOCAL 1575
INTERNATIONAL LONGSHOREMEN'S
ASOCIATION, AFL-CIO**,
**Defendant**

**OPINION AND ORDER ON RECONSIDERATION**

Pending before the Court is defendant, Local 1575 International Longshoremen's Association, AFL-CIO (ILA) *Motion for Amendment of Opinion and Order* (Docket No. 30) and *Motion for Reconsideration* (Docket No. 31). ILA's *Motion for Amendment of Opinion and Order* (Docket No. 30) moves the Court to amend the *Preliminary Injunction Opinion and Order* issued on April 7, 2006, (Docket No. 23) wherein the Court ordered ILA to: 1) arbitrate the controversy relating to the number of employees to be used by the employer in loading or unloading operations and/or relating to the use of ILA personnel handling the twist lock devices locking the container to the truck hauler's chassis as the vehicle and container exits the company's premises; and 2) not to engage in any strike, directly or indirectly through employees or third parties which may self help its cause of action against the employer for alleged violations to the Collective Bargaining Agreement (CBA). Further, ILA's *Motion for Reconsideration* (Docket No. 31) moves the Court to set aside the Preliminary Injunction issued against ILA. For the reasons stated herein, the Court hereby **GRANTS in part** ILA's *Motion for Amendment of Opinion and Order* (Docket No. 30), and **DENIES** ILA's *Motion for Reconsideration* as to the Preliminary Injunctive relief (Docket No. 31).

**FACTUAL BACKGROUND**

On April 7, 2006, after holding a hearing on the evening of April 6, 2006, the Court granted plaintiff's request to issue a Preliminary Injunction against ILA enjoining defendant from engaging in any strike, directly or indirectly through its members and/or any third parties which could help in advancing its claims against the employer for alleged violations to the CBA governing the labor relationship amongst the parties. The Preliminary Injunction further ordered ILA to proceed to arbitrate all controversies related to the number employees to be used by the employer in loading or

unloading operations and all controversies relating to the necessary personnel to handle the twist safety devices locking the containers to the truck's chassis prior to exiting the company premises currently being handled (the locking device operation) by the truckers.  (See illustration of the twist lock device at Ex. 3.)

The Court issued the preliminary injunction not based in the no-strike clause of the CBA, but based on the fact that compulsory arbitration clause of the CBA required all disputes arising between the union and the company to be arbitrated respecting the interpretation and/or the implementation of the agreement.  The evidence presented showed that ILA's claims relates to the number of employees called by the employer to perform specific jobs as provided in Article VI of the CBA. ILA sustains that the employer's actions violates Article VI of the CBA inasmuch the employer hired lesser union employees, than as agreed in the CBA, to perform loading or unloading operations, and the closing of the safety twist locks securing the containers to the chassis of the trucks.  In turn, employer's personnel testified that its actions complied with the terms of the CBA, and relating to the twist lock operation, that said operation has been performed in similar fashion since the year 2000, and that the short duration twist lock operation has been accepted as a not covered activity by other longshoremen organized operations with the same union throughout the eastern seaboard in the continental United States.

Without entering into the merits of the underlying disputed labor claims, the Court issued the preliminary injunction  assessing credibility to the employer's witness to the effect that ILA's members had refused to arbitrate the controversy and engaged in self help by concertedly interrupting the company operations notwithstanding, the employer had requested to arbitrate said issues (Docket No. 23).  Even further, the employer witnesses testified as to their willingness to conduct arbitration proceedings in an expedited fashion.  In turn, ILA's refusal to arbitrate its claims was corroborated by the testimony provided by Mr. Francisco Diaz, ILA's Vice-President. Furthermore, the Court credited testimony provided by plaintiff's employees to the effect that should the TRO had not been issued late in the afternoon of March 13, 2006, ILA's members would not have entered the employer's premises on March 14, 2006.  The Court finally, determined that ILA made a feeble argument that the instant controversy was not arbitrable since the strong all encompassing cardinal rule of labor law of arbitrability rests in the sound principle that all matters which the parties disagree to, are covered within the scope of the grievance and arbitration procedure except to those matters specifically excluded.  *United Steelworkers v. Warrior & Gulf Navigation*

*Co.*, 363 U.S. 574, 582-583 (1960).

## MOTION FOR RECONSIDERATION UNDER RULE 59, FED.R.CIV.P.

Motions for reconsideration are generally considered either under Fed. R. Civ. P. 59 or Rule 60, depending on the time such a motion is served. *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 284 (1st Cir. 1993). **Whether under Rule 59 or Rule 60, a motion for reconsideration cannot be used as a vehicle to relitigate and/or rehash matters already litigated and decided by the Court.** *Standard Quimica de Venezuela v. Central Hispano International, Inc.*, 189 F.R.D. 202, 205 n.4 (D.P.R. 1999)(emphasis added). **These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law.** See *Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir. 1994)(citing *F.D.I.C. Ins. Co. v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)); *Cherena v. Coors Brewing Com,.* 20 F.Supp. 2d 282, 286 (D.P.R. 1998); see also *National Metal Finishing Com. v. Barclaysamerica/Commercial, Inc.*, 899 F.2d 119, 124 (1st Cir. 1990). Hence, this vehicle **may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier"**. *Id.*, at 123. See also, *Waye v. First Citizen's National Bank*, 846 F.Supp. 310, 314 n.3 (M.D.Pa. 1994)(a motion for reconsideration is unavailable if it simply brings a point of disagreement between the court and the litigant, or to reargue matters already properly prior thereto disposed).

The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration. *Sierra Club v. Tri-State Generation and Transmission Assoc., Inc.*, 173 F.R.D 275, 287 (D.C. Col. 1997); *Hatfield v. Board of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e) if it seeks to change the order or judgment issued. *Id*. Further, although Rule 59(e) refers to judgments, i.e rulings that are appealable, Rule 59(e)'s legal standards will be applied to motions for reconsideration interlocutory orders in nature. See *Waye v. First Citizen's National Bank*, 846 F.Supp. 310 (request for reconsideration of an interlocutory order denying plaintiff's motion for a default judgment); *Atlantic Sales Legal Foundationn v. Karg Bros. Inc.*, 841 F.Supp. 51, 55 (N.D.N.Y. 1993)(motion for reconsideration of an order granting in part and denying in part a motion for summary judgment); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D 99 (E.D Va. 1983)(motion for reconsideration of order denying motion to dismiss).

Although the general rule is that motions for reconsideration will not be considered when filed more than ten days after the judgment at issue is entered, this deadline does not apply to the reconsideration of interlocutory orders. With interlocutory orders, whether a motion for reconsideration has been timely filed rests solely on whether or not the motion was filed unreasonably late. See *McDowell Oil Service, Inc. v. Interstate Fire and Casualty Company*, 817 F. Supp. 538, 543 (M.D Pa. 1993); *Frito Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 389-90 (D.P.R. 1981); *Atlantic States Legal Foundation v. Karg Bros.*, 841 F.Supp. at 55; *McCarthy v. Manson*, 714 F.2d 234, 237 (2nd Cir. 1983).

As a general rule, motions for reconsideration should only be exceptionally granted. As the sister court of the Western District Court of Pennsylvania has wisely explained:

> [M]otions for reconsideration must be strictly reviewed for at least four reasons. First, it would tend to undercut the court's first decision and transform it into an advisory opinion, which is prohibited. Second, motions for reconsideration run counter to the operation of the Federal Rules of Civil Procedure, which provide all the necessary safeguards to promote fair decisions. Third, broad interpretation of motions for reconsideration is not supported by controlling precedent. And last but not least, reconsideration of dispositive decisions...hinders the court's ability to decide motions awaiting resolution that have yet to be reviewed once, let alone twice.

*Williams v. City of Pittsburgh*, 32 F.Supp. 2d 236, 238 (W.D. Penn. 1998). Thus, in interest of finality, at least at the district court level, motions for reconsideration should be granted **sparingly** because parties should not be free to relitigate issues a court has already decided. *Id.*,(citing *New Chemic (U.S.), Inc. v. Fire Grinding Corp.*, 948 F.Supp. 17, 18-19 (E.D Pa. 1996)). "Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly". *Williams v City of Pittsburgh*, 32 F.Supp.2d at 238. A district court may, however, grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Dodge v. Susquehanna University*, 796 F.Supp. 829, 830 (M.D.Pa. 1992).

On the other hand, a Rule 60(b) motion permits the Court to "relieve a party...from a final judgment, order, or proceeding" for the specifics instances prescribed by the rule. However, Rule 60(b)(6) applies only in exceptional and extraordinary circumstances, that is, "unusual and extreme situations where principles of equity **mandate** relief" *Jinks v. Alliedsignal Inc.*, 250 F.3d 381, 387 (6th Cir. 2201)(citing *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)(emphasis in

the original)). This remedy motion is not to be used as a substitute for appeal. See *Jinks v. Alliedsignal Inc.*, 250 F.3d 381 at 386(citing *Greenwood Explorations Ltd v. Mert Gas & Oil Corp., Inc.*, 837 F.2d 423, 427 (10th Cir. 1988)).

With these parameters in mind, the Court reviews ILA's request for reconsideration as to its previous decision granting plaintiff's request for a preliminary injunction.

## LEGAL ANALYSIS

### I. ILA's Motion to Amend Opinion and Order at Docket No. 30

ILA's *Motion for Amendment of Opinion and Order* (Docket No. 30) moves the Court to amend the Opinion and Order issued granting the preliminary injunction to show that "the defendant in fact compl[ied] and suppl[ied] the personnel as required in the work orders"; that although the Verified Complaint states that the reason for the truck drivers refusal to take the cargo out of plaintiff's terminal facilities claiming that ILA personnel would attack and/or hurt them, the testimony presented during the preliminary injunction hearing revealed that "there was no violence, issuance of threats, actual threats, intimidation or coercion"; that relating to the March 14, 2006 events, the opinion and order should "reflect that no strike, coercion, work stoppage or stoppage of operations was engaged in, or undertaken" by ILA's members, rather that ILA's "members entered their shifts on time, that the demonstration was peaceful and made in a short period of time", and that the shift commenced on time. Finally, ILA moves the Court to correct the Opinion and Order to reflect that incidents referred as occurring on March 13, did in fact occur on March 10, 2006. As to this matter, ILA sustains that Mr. Roberto Batista's testimony showed that he did not have personal knowledge of threats made to anyone and that the conversations held between Mr. Batista and Mr. Carlos Ortiz, ILA's President, were at all times cordial in nature. Furthermore, ILA requests that the opinion and order should reflect that at the time the facts that gave rise to the instant complaint occurred, ILA suggested in an amicably and good faith manner various proposals on remedying the impasse. Finally, ILA requests that the opinion and order be amended to show that ILA agreed to arbitrate the recruitment of fixed personnel for stacker operations.

As stated previously, a party's motion for reconsideration should be granted only in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Dodge v. Susquehanna University*, 796 F.Supp. at 830. ILA's *Motion for Amendment of Opinion and Order* (Docket No. 30) fails to meet any of the three criteria previously enumerated

hence, the Court is precluded from granting ILA's request and amend its opinion and order. Although ILA states that the amendments are required to reflect that plaintiff relied in facts, without any supporting basis thereto, for the issuance of the Temporary Restraining Order, the Court notes that Temporary Restraining Order (Docket No. 9) was issued because of the existence of a mandatory and compulsory arbitration clause for all labor-contract disputes amongst the parties under §301 of the *Labor Management Relations Act*, 29 U.S.C. §185a, as the **exclusive remedy** relating to work related disputes, and not based on the fact that the existence of a no-strike clause. Consequently, ILA's requests relating to conduct, nature of conversations held amongst ILA and plaintiff's personnel, and whether threats were made and/or ILA's personnel refused to work, are irrelevant to the nature of the preliminary injunction issued by the Court.

Further, at the time the preliminary injunction request was granted, the undersigned weighed several factors, to wit, (1) the likelihood of success on the merits, (2) the potential for irreparable harm to the movant, (3) the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted, and (4) the effect of the decision on the public interest. See *Ross-Simons of Wardwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir. 1991). Likelihood of success is the **touchstone** of the preliminary injunction inquiry. See *Ross-Simons*, 102 F.3d at 16; *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993). The Court specifically asserted that it refused to address the merits of the complaint but concluded that the testimony provided showed that plaintiff requested to arbitrate the controversy and conduct the arbitration through an expedited proceeding, however ILA's directors refused to enter into the arbitration procedure, although intervention was sought from the Puerto Rico Department of Labor seeking mediation and both sides attended. Furthermore, the Court specifically determined that plaintiff had probability to succeed on the merits of the complaint, and that irreparable harm would be suffered should the injunctive relief not be entered.[1] Moreover, the Court deemed that in the balance of equities, ILA's would only have to wait for a short period of time for arbitration proceedings to conclude, while to the contrary, the company would be forced to surrender its rights under the arbitration clause and no-strike clause.

However, an examination of the transcript of proceedings for the preliminary injunction

---

[1] The nature of the cargo involved perishable goods for the school system in P.R., the U.S. Mail, medical supplies for hospitals in P.R., and essential raw materials for various industries in P.R. causing potential interruption in the operation of said plants. (Docket No. 9, P. 2).

hearing reveals that the opinion and order issued at Docket No. 23 should be amended *nunc pro tunc* exclusively to reflect that the incidents that interrupted plaintiff's operations occurred on March 10, 2006, and not on March 13, 2006 as expressed in the Opinion and Order. Specifically, Page 4, ¶3, should read as follows:

> The Court further credits the testimony of Mr. Carlos F. Santos-Diaz and Roberto Batista-Patrana as well as that of Vladimir Alexander Perez to the effect that ILA's representatives on the morning of March 10, 2006, encouraged a work stoppage of truckers, not covered by the CBA, thereby, eventually causing the interruption of Horizon's operations for one and a half hours.

ILA further request that the Opinion and Order reflect that the union provided the personnel as required in the work orders; that there was no violence, issuance of threats, actual threats, intimidation or coercion by the union; that relating to the March 14, 2006 events, the Court should amend its Opinion and Order to show that no collective action was engaged in, or undertaken by ILA's members, that the demonstration was peaceful and made in a short period of time, and that the shift commenced on time. ILA's request is irrelevant to the merits of the Opinion and Order since the instant injunction was granted in aid of arbitration, and not for any other reason, including violence nor whether the refusal to work by truckers that interrupted the employer's operations was peacefully and lasted for a short period of time. Further, the record was developed by both parties and specific references as to ILA's members participation through the various incident with the employer are detailed therein hence there is no need to amend the Opinion and Order to show said averments.

The Court relates but a few highlights of the transcript of the hearing held the evening of April 6, 2006 (Docket No. 36). The testimony provided by Mr. Vladimir Alexander Perez, Yard Manager for plaintiff, stated that the Vice President of the Union told him "you'll see tomorrow no one will show up to work".[2] (Docket No. 36, P. 82). Subsequently, plaintiff sent a confirmation note with the working schedule via fax to ILA with a note that the order was rejected by Mr. Francisco Diaz, union V.P., refusing to provide the reasons and stating in addition that nobody would work tomorrow, on March 14, 2006. (Signed) Vladimir Perez (translation ours). (See, Ex. 4). The fax has a confirmation of receipt by the union. The witness insisted in the statement of Vice-President Diaz that no one "will show to work" notwithstanding aggressive cross-examination. (Docket No. 36, P.

---

[2] Notwithstanding that Vice President Diaz testified at the Preliminary Injunction Hearing, he did not deny that he informed Perez that the employees would not "show up to work".

91).  The Court credits the testimony of Vladimir Perez.  The witness then stated that the persons performed the work "based on the injunction".  (Docket No. 36, P. 95).  Plaintiff filed its petition for injunctive relief on March 13, 2006 at 3:02 p.m., and the Court signed the order on the same date at 5:45 p.m.

Plaintiff's Director of Labor Relation, Mr. Manuel Antonio Lopez, stated under oath, that a grievance existed between the company and the union because "we were not hiring one stevedore to attach to a one-month (sic.) stacker that we use in the dispatch and service to the customer, and that has been the way that we have been operating since the year 2000".  (Docket No. 36, P. 100).  The position of the company, as expressed in an expedited mediation session held on March 11, 2006, was that they had been operating in this fashion also in several others parts in other organized locations like Elizabeth, Houston, and Jacksonville with the same international union (Docket No. 36, P. 102).  The union reiterated their position that the company was violating Article VI of the CBA (Docket No. 36, P. 102-104).  The company requested arbitration when no agreement was reached pursuant to Article XVI, *Grievance and Arbitration* (See Ex. 2).  The Court adds that said CBA clause contains a broad arbitration clause which reads as follows: "**[a]ll disputes** between the union and company respecting the interpretation of this agreement shall be resolved in the following manner ..." (Emphasis added).  The CBA also allows for expedited procedure leading to arbitration as contained at Article XVI(c).  Further, the President of the union stated that "he was not to arbitrate the dispute" (Docket No. 36, P. 103).[3]

On March 10, 2006, "the [not organized] truckers refused to take out the cargo" (Docket No. 36, P. 103).  An expedited mediation was held on Saturday March 11, 2006, before the Mediation and Conciliation Bureau of the Labor Department.  The union again refused to arbitrate the issue (Docket No. 36, P. 104).

On March 14, 2006, in the early morning hours at around 6:30 a.m., no worker had entered the area of work, remaining in the parking area (Docket No. 36, P. 104)(The Court excluded the extra baggage of the testimony of the witness -the state of mind of defendants).  However, the Court is not precluded from analyzing the entire evidence in light of all the record.  Notwithstanding, it was unusual at 6:30 a.m. for "all workers, meaning all yard and the vessel men, were outside of the shape [working] area ... in the parking area" (Docket No. 36, P. 105-106).  The TRO issued on March 13,

---

[3] The President of the union was also present at the Preliminary Injunction hearing and did not take the stand to deny the non-hearsay statement attributed to him by Manuel Antonio Lopez.  Rule 801(d)(2), Fed.R.Evid.

2006 (Docket No. 9) was then served to the employees and union officers present and the employees entered the working area "slow but surely" (Docket No. 36, P. 16).

Finally, the Court, the evening of the hearing asked Vice President Diaz whether he would have an objection to arbitrate the dispute as to who should operate the locking device:

> Q. The Court: Do you have any objection that this case be arbitrated?
> A. Yes.
> Q. The Court: You do not want to arbitrate this case?
> A. I would have to say that I have to consult with counsel.

(Docket No. 36, P. 144).

The conclusion is inescapable, the union interrupted the operations of the company in one occasion, albeit for a short time on March 10, 2006. The union clearly stated that operations would be interrupted on March 14, 2006, stating that "no one will show up for work", thereafter the company sent via fax a work order scheduling work for March 14, 2006, confirming the union's refusal to produce the men for work and no response was received. Finally, only the service of the Court's TRO on the employees that were milling around on the patio that morning prevented the second stoppage of work. Moreover, at the Preliminary Injunctive Hearing held on April 6, 2006, almost a month after the controversy had matured, the leadership of the union was not willing to arbitrate the controversy notwithstanding the broad arbitration clause, the employer's written request arbitrate, and the Court's Temporary Restraining Order.

Therefore, ILA's *Motion for Amendment of Opinion and Order* (Docket No. 30) is hereby **GRANTED in part** for the exclusive purpose to reflect changes to Page 4, ¶3, (as to the date of the temporary work stoppage of the truckers caused by union leadership)[4] of the Preliminary Injunction Opinion and Order at Docket No. 23.

**II. Motion for Reconsideration (Docket No. 31)**

ILA moves the Court to set aside the injunctive remedy issued against the defendants

---

[4] The Court harbors no doubt that the circumstantial evidence is strong that the refusal of the truckers to close the twist lock safety devices was induced by the union leadership on March 10, 2006. (See testimony of Mr. Roberto Batista, Operations Manager, as to the truckers refusal to haul the container trucks and the union President, Vice-President, delegates and a few other union members simultaneously appearing at the scene together with their request that the work as to the twist locks was to be performed by union members. (Docket No. 36, P. 21-22)). As stated by Chief Judge Fuste paraphrasing the words of Supreme Court Justice Raul Serrano Geyls in *People v. Luciano*, 83 PRR 551 (1961), "Judges are not fools required to believe what ordinary citizens do not accept". *Carrasquillo v. Aponte-Roque*, 638 F.Supp. 137, 140 n.1, (D.P.R. 1988).

sustaining contrary to the reasoning expressed by the Court in its Preliminary Injunction Opinion and Order (Docket No. 23), alleging particularly that Section 4 of the *Norris-LaGuardia* Act[5] precludes a district court from entering a temporary restraining order, and/or any injunctive remedy in a case involving or growing out of any labor dispute restraining certain conduct of those persons who may be interested in such dispute.[6]

ILA affirms that although the Court issued a preliminary injunction under *Boys Markets, Inc. v. Retail Clerk Union, Local 770*, 398 U.S. 235 (1970), and *Buffalo Forge Co. v. United Steelworkers of America, AFL-CIO, et al.*, 428 U.S. 397 (1976), the court's ruling is contrary to the provisions of the *Norris-LaGuardia* Act. Further, ILA concludes that the preliminary injunction issued was grounded on ILA's refusal to arbitrate a labor dispute arising out of Article VI of the CBA despite testimony evidencing the union's agreement to arbitrate certain issues relating to recruitment of personnel for the stacker operation, and that said arbitration is scheduled to commence on July 5, 2006. Additionally, ILA affirms that its refusal to arbitrate additional aspects relating to the stacker operation should not be interpreted by the Court as a general unwillingness to arbitrate and hence there is no violation of the CBA. Further, ILA sustains that the testimony provided by Mr. Francisco Diaz, ILA's Vice-President, evidences that the union has never refused to arbitrate any issues with plaintiff should the Court so order.

Moreover, as to the issue relating to the stevedores and/or the handling of the safety twist lock operation, ILA alleges that the union previously agreed to arbitrate said matter, and that ILA Vice-President's testimony showed that the claim against the employer was that there was a breach

---

[5] 29 U.S.C. §101 *et seq*.

[6] Section 4 of the *Norris-LaGuardia* Act, 29 U.S.C. §104, provides that district courts should abstain from prohibiting any person or persons participating or interested in such dispute from doing any of the following acts:
    a) Ceasing or refusing to perform any work or to remain in any relation of employment;
    b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;
    c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;
    d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States;
    e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
    f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;
    g) Advising or notifying any person of an intention to do any of the acts heretofore specified;
    h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and
    i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

of contract because plaintiff was recruiting less than the usual personnel historically called to work. ILA avers that at no time, its members have threatened, intimidated, coerced, attempted a work stoppage, struck, slow-downed, picketed or performed any harmful act against the employer, and that the testimony provided by plaintiff during the hearing does not support allegations that ILA's members were responsible for the incidents occurring on March 10, 2006, in which allegedly truck drivers were threatened by union members. To the contrary, ILA sustains that the employer created a fictional labor dispute by provoking a factual situation with union members. Furthermore, ILA avers that it was plaintiff who rejected ILA's proposals to solve the controversy by recruiting additional stevedores to perform operations relating to locking the twist locks. First, as stated before, the record is clearly against the defendants averments.

Second, the crux of ILA's request to set aside the preliminary injunction rests in its understanding of the remedies available to the employer under *Boys Markets/Buffalo Forge*. ILA claims that plaintiff's allegations in the complaint relating to the union breaching its obligation under the CBA not to strike does not warrant the issuance of a preliminary injunction. Similarly, ILA affirms that the evidence presented by plaintiff during the hearing did not show the need for the issuance of a preliminary injunction, and that pursuant to the narrow exception provided in *Boys Markets/Buffalo Forge*, and the congressional policy against issuing injunctive remedies as stated in the *Norris-LaGuardia* Act, the Court could have compelled arbitration under remedies other than injunctive relief.

ILA alleges that the preliminary injunction should be set aside inasmuch maintaining the *status quo* pending the outcome of the arbitration proceedings, places the union at a disadvantage because on one hand, the union must comply with the conditions imposed by the Court in the preliminary injunction, although the facts as alleged by plaintiff were never proved while, on the other hand, the employer may seek further issuance of injunctive remedies by creating fictional disputes that may lead to a labor dispute. In the alternative ILA moves the Court to issue an order against the employer enjoining the employer from creating or engaging in other similar situations, to wit, creating a fictional factual dispute to obtain an injunctive remedy.

The Court again reiterates that the facts of the case do not constitute an invention of a fictional factual dispute. The dispute exists, statements of work stoppage were made, a work stoppage occurred, and the union leadership has continuously refused to arbitrate the issue as to who is to operate the safety twist lock device that locks the container to the chassis of the trucks.

It is settled that the *Norris-LaGuardia* Act prohibits federal courts from issuing injunctions in cases involving labor disputes. 29 U.S.C. §104. However, a narrow exception to said prohibition has been judicially recognized when the employer seeks injunctive relief against an union pursuant to *Boys Markets*, and *Buffalo Forge*. In order to obtain the injunctive relief, the CBA must contain "a no-strike clause and the dispute underlying the strike is subject to the arbitration provisions of the contract". *International Ladies' Garment Workers' Union v. Bali Company*, 649 F.Supp. 1083, 1086 (D.P.R. 1986). Further, the Supreme Court has consistently rejected the contention that the provisions of *Norris-LaGuardia* Act prohibits granting injunctive relief in furtherance of arbitration "noting that a refusal to arbitrate was not 'part and parcel of the abuses against which the Act was aimed' ... and that the Act itself manifests a policy determination that arbitration should be encouraged". *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. at 243(citations omitted).

In the words of the Supreme Court:

> A District Court entertaining an action under §301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity-whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. (Citations omitted).

*Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. at 254. Evidently, the Supreme Court has recognized that there is a valid narrow exception when an injunctive remedy may be granted by a district court, despite the *Norris-LaGuardia* prohibition against injunctive remedies in labor disputes, to wit, in those labor disputes wherein the injunctive remedy seeks not to interfere with and frustrate the arbitral process agreed by the parties to settle a dispute and the employer is willing to arbitrate the dispute, as the company in irrefutable fashion has done (Ex. 2 - willingness to arbitrate- appearance at mediation proceedings-willingness to accept expedited arbitration).

Similarly, *Buffalo Forge* stands for the proposition that federal district courts have jurisdiction to issue an injunction preserving the *status quo* to restrain the actions of an employer in

aid of arbitration. *Buffalo Forge Co. v. United Steelworkers of America, AFL-CIO, et al.*, 428 U.S. at 405-407. The Supreme Court determined that the injunctive relief was not available in that particular case only because this issue was relating to a "sympathy strike" with another cause which was not arbitrable amongst the parties before the court. But had the issue at *Buffalo Forge* been one covered by the grievance and arbitration procedure as to dispute relating to terms and conditions of employment, the injunction would have been granted in *Buffalo Forge*. See, *Buffalo Forge*, 428 U.S. at 405-406.

The *Buffalo Forge* court held that:

> The issue in this case arises because the employer not only asked for an order directing the Union to arbitrate but prayed that the strike itself be enjoined pending arbitration and the arbitrator's decision whether the strike was permissible under the no-strike clause. Contrary to the Court of Appeals, the employer claims that despite the Norris-LaGuardia Act's ban on federal-court injunctions in labor disputes the District Court was empowered to enjoin the strike by s 301 of the Labor Management Relations Act as construed by Boys Markets v. Retail Clerks Union, supra. This would undoubtedly have been the case had the strike been precipitated by a dispute between union and management that was subject to binding arbitration under the provisions of the contracts. In Boys Markets, the union demanded that supervisory employees cease performing tasks claimed by the union to be union work. The union struck when the demand was rejected. The dispute was of the kind subject to the grievance and arbitration clauses contained in the collective-bargaining contract, and it was also clear that the strike violated the no-strike clause accompanying the arbitration provisions. The Court held that the union could be enjoined from striking over a dispute which it was bound to arbitrate at the employer's behest.
>
> The holding in Boys Markets was said to be a "narrow one," dealing only with the situation in which the collective-bargaining contract contained mandatory grievance and arbitration procedures. Id., at 253, 90 S.Ct., at 1594."(F)or the guidance of the district courts in determining whether to grant injunctive relief," the Court expressly adopted the principles enunciated in the dissent in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962), including the proposition that
> " '(w)hen a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike.' 398 U.S., at 254, 90 S.Ct., at 1594 (emphasis in Sinclair ).
>
> **The driving force behind Boys Markets was to implement the strong congressional preference for the private dispute settlement mechanisms**

> **agreed upon by the parties. Only to that extent was it held necessary to accommodate §4 of the *Norris-LaGuardia* Act to §301 of the Labor Management Relations Act and to lift the former's ban against the issuance of injunctions in labor disputes**. Striking over an arbitrable dispute would interfere with and frustrate the arbitral processes by which the parties had chosen to settle a dispute. The quid pro quo for the employer's promise to arbitrate was the union's obligation not to strike over issues that were subject to the arbitration machinery. Even in the absence of an express no-strike clause, an undertaking not to strike would be implied where the strike was over an otherwise arbitrable dispute. Gateway Coal Co. v. Mine Workers, supra; *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Otherwise, the employer would be deprived of his bargain and the policy of the labor statutes to implement private resolution of disputes in a manner agreed upon would seriously suffer.

*Buffalo Forge Co. v. United Steelworkers of America, AFL-CIO, et al.*, 428 U.S. at 405-407 (emphasis added). Accordingly, "[i]njunctive relief is available in aid of arbitration where the underlying dispute is subject to mandatory arbitration under the labor contract and where it is necessary to prevent arbitration from being rendered meaningless". *International Ladies' Garment Workers' Union v. Bali Company*, 649 F.Supp. at 1086 (citations omitted). *Buffalo Forge* merely sets forth that sympathy strikes are not covered by the exception created at *Boys Markets*, 428 U.S. at 407-408. The Buffalo Forge court ruled as follow:

> Boys Markets plainly does not control this case. The District Court found, and it is not now disputed, that the strike was not over any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract. The strike at issue was a sympathy strike in support of sister unions negotiating with the employer; neither its causes nor the issue underlying it was subject to the settlement procedures provided by the contracts between the employer and respondents. The strike had neither the purpose nor the effect of denying or evading an obligation to arbitrate or of depriving the employer of its bargain.

*Buffalo Forge*, 428 U.S. at 407-408. Evidently, the Supreme Court's narrow exception to the *Norris-LaGuardia* Act is pellucidly present in the instant case since the instant case is not a "sympathy strike" matter and to the contrary is a dispute involving the interpretation of the contract not specifically excluded from the grievance and arbitration procedure.

An examination of the proceedings during the hearing reveals the following: the Court firstly determined that the employer's complaint alleged a controversy that was clearly an arbitrable issue pursuant to the language of the CBA . The record shows that the employer has undoubtedly agreed

to arbitrate the issue (Ex. 2). The Court further stated that the injunctive remedy was not merely issued as consequence of a breach of merely the no-strike clause contained in the CBA. Then the Court determined that the injunctive relief was issued without entering into the merits of the underlying controversy, that is, the issue as to whether the employer was hiring the number of stevedores as agreed under the CBA or who was to operate the twist lock safety device. These labor grievances were preserved for the arbitrator to decide. ILA's claims that the Court did not have to issue the injunctive remedy because the union provided alternatives to solve the impasse is not sustained by the facts nor by the applicable case law inasmuch as the remedy is to proceed to arbitration and not seek self help to frustrate the arbitration procedure since the company had previously agreed and urged to arbitrate this issue. Similarly, ILA's claims that the issuance of the preliminary injunction places the union at a disadvantage because the union must comply with the conditions imposed by the Court in the preliminary injunction and, on the other hand, the employer may seek further issuance of injunctive remedies by creating factual disputes that may lead to a labor dispute lack foundation on the record and are mere self-serving averments not to be considered at this stage. The Court refuses to so conclude based on the record that the actual controversy is a factual dispute fictionally created by the employer to force ILA into a labor dispute. The Court is convinced that the record support that there exists a dispute as to who is to perform the services of twisting the safety devices of trucks locking the containers. The controversy is whether the chauffeur of the truck is to perform the task or a member of the contracting unit.

Consequently, the Court deems that ILA's motion for reconsideration simply seeks to relitigate and/or rehash matters already litigated and decided by the Court. *Standard Quimica de Venezuela v. Central Hispano International, Inc.*, 189 F.R.D. at 205 n.4. Further, ILA's analysis fails to correctly point that the court has committed a manifest error of law, or that an intervening change of law has occurred, or that it presents newly discovered evidence, hence ILA has failed to meet the necessary threshold in order to move the Court to reconsider its previous decision. *Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d at 29. Moreover, the Court deems that ILA merely attempts to raise new legal theories that should have been raised earlier, and that the arguments developed simply show a disagreement between the Court and ILA as to the applicability of the interpretative jurisprudence relating to the injunction exception to the provisions of the *Norris-LaGuardia* Act as set forth in *Boys Markets* and *Buffalo Forge*. *Waye v. First Citizen's National Bank*, 846 F.Supp. at 314 n.3.

To conclude the CBA contains a broad grievance and arbitration clause which does not exclude the instant controversy as to who should operate the safety twist lock device locking the container to the truck's chassis.  See *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582-583.  The union interrupted operations as to this grievance on March 10, 2006 for one and half hours.  Further, the CBA contains also a no-strike clause and the employer has urged arbitration in writing.  The company provided credible testimonial and documentary evidence that the union and the employees were about to engage in a strike the morning after the Court issued the TRO (March 14, 2006), union leadership and union members only entered to begin work after they were served with the TRO documents.  Thereafter, the union leadership declined to arbitrate the controversy (the union President).  Finally, several weeks later, the night of the Preliminary Injunctive relief, on April 6, 2006, the union Vice-President, Francisco Diaz, unequivocally stated that the union would not arbitrate the matter.  The instant case undoubtedly falls within the confines of the exception of the injunctive remedy under the *Norris-LaGuardia* as set forth under *Boys Markets* and *Buffalo Forge* all under §301 of the Taft-Harley Act.[7]

Therefore, ILA's *Motion for Reconsideration* (Docket No. 31) is hereby **DENIED**.

## CONCLUSIONS

For the reasons stated herein, the Court hereby **GRANTS in part** ILA's *Motion for Amendment of Opinion and Order* (Docket No. 30) to the exclusive purpose to reflect changes to Page 4, ¶3, of the Opinion and Order at Docket No. 23 to reflect the correct date of the work stoppage of truckers induced by union members to March 10, 2006; and **DENIES** ILA's *Motion for Reconsideration* (Docket No. 31).  The Court shall proceed to amend the Preliminary Injunction Opinion and Order issued at Docket No. 23 to reflect amendments as stated herein.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 19th day of May 2006.

**S/DANIEL R. DOMINGUEZ**
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

---

[7] The Court reiterates that it is immaterial whether the refusal to arbitration is accompanied by coercion or violence.  The Court's jurisdiction is asserted by means of the refusal to arbitrate the controversy under section 301 of the Taft-Harley Act, 29 U.S.C. §185(a).